Yes, please. Thank you. The next case, number 19-1523, United States v. Nesta-Morales-Cortijo. At this time, would counsel for the appellant please introduce himself on the record to begin. May it please the court. Rick Nemcek Cruz for the appellant, Nesta-Morales-Cortijo. The appellant's argument, this appeal, is very, very simple. The key facts to support the upward variance imposed by the court simply are not supported by a preponderance of the evidence in the record. And the record is very simple. It consists of a single document, that is, the amended pre-sentence investigation report. The other two sources of information on this guilty plea sentencing do not speak to anything related to what happened prior to the offense of conviction, which was a carjacking. There were three events that the court referred to in this case. But counsel, here you have an unobjected pre-sentence report, and there was an opportunity to object that. So those facts, unobjected, can be considered for part of sentencing. That's correct. Neither side objected, and there's no question about that. That is the record with respect to what has been termed relevant conduct, which occurred prior to the Lancer carjacking, which is the offense of conviction. And that document outlines two other problems or two other events that occurred. But it is deemed admitted because there was no objection. Right. It's all there, but there's nothing there. Read it. The entire relevant conduct, supposed relevant conduct, information consists of two paragraphs. In that entire document, it's two paragraphs. When you say entire document, you refer to the PSR, right? The pre-sentence report? I'm sorry, I didn't hear that. When you say it's in the entire document, it's two paragraphs, you're referring to the pre-sentence report, correct? That's right. The pre-sentence investigation report. In most pre-sentence reports, and in my experience, it could be one paragraph, two paragraphs, but if it's not objected, it's admitted, and that should be sufficient for the judge to consider that. It should be sufficient, and I agree with you, but it's not because there is no direct evidence in the record that is in that document that the appellate participated in either of the events, the shootout or the Prius carjacking. There seems to be some fundamental understanding of how this works. If the PSR alleges these facts and they go unobjected, then they're deemed admitted. If there's an objection, then it certainly puts the court on notice that there's an objection to the facts and that your client's not admitted to it. That's right. In that instance, the government will be on notice that it has the burden of bringing in evidence if it wants the court to consider that as relevant conduct, to bring in that evidence. But if it's deemed admitted because there's an objection to it, the court has a right to consider it. Yes, of course. There's no question about it, and if you look at it, that's what this whole case is about. That pre-sentence investigation report does not contain sufficient evidence to consider that anything that happened before the offensive conviction was relevant conduct. The facts that need to be found that underlie a finding of relevant conduct simply are not there. There is nothing. So if the defendant tells the probation officer, this is just hypothetical, I shot Annie. That's right. And the probation officer puts that in the report. That's accepted. And the defendant doesn't say, no, I didn't shoot Annie. There's no evidence that I shot Annie. There's nothing in the report that says the defendant says he shot anyone or fired a gun or fired a weapon or was at the scene of the carjacking or the scene of the first carjacking or the scene of the shootout. There's nothing in there. There are no admissions, and there's no direct evidence that he was there. There's nothing. There are no witnesses that say he was there. How was he shot? Your client was shot. Well, I don't know. I can't answer that because it doesn't appear in the report. The only thing that appears in the report is he was shot. He showed a shotgun wound. But if you look at the PSR, there was no shotgun found or no evidence, apparently no evidence of a shotgun being found because the report says there were rifles and pistols used in the shootings, but nothing about a shotgun. So it's unexplained. And the same thing is true of the circumstantial evidence as well as the, as you point out, the shooting or the wound is circumstantial evidence of some participation in some shootings, but it's not clear where that happened. And there are some, there was some time that happened, that occurred between the Prius carjacking and the Lancer carjacking. In the PSR it says a short time, but that's not specified, and we don't know what happened in between that time or how the perpetrators of the Prius carjacking disappeared. We don't know where they went. There's no evidence that identifies the two groups. Wasn't your client identified as driver of the green Mitadushi? In the second carjacking, that's the offensive conviction. My client fled guilty to that, yes. But you say if we look through the whole PSR, there's no evidence at all that he did anything else. That's right. There isn't any. In fact, there's evidence, there's direct evidence that he didn't. Simply the Prius carjacking was perpetrated by three people. That's what it says in the PSR. Three people got into the Prius to drive it away and couldn't. And he wasn't identified as one of them. So your position is it's as if the PSR said on paragraph 12, Al Capone robbed a bank and you didn't object to it because it's got nothing to do with your client. Yeah. If you're not named, how can you object based on what? Nobody's named. None of the perpetrators of any of the events, the conduct prior to the Prius carjacking, are named in the report except for one. I've forgotten his name, but he was found next door wounded in a construction site. You're saying the facts as outlined in the PSR are insufficient to give rise to a reasonable inference that your client had anything to do with any of that shootout. Yes, because there isn't any direct evidence and the circumstantial evidence is contradicted by the direct evidence in the PSR. Let me also ask, during the sentencing hearing, did he object to those findings when he was sentenced? I don't think there was an objection, correct? No, there was no objection. That's another opportunity to say, Judge, you're sentencing my client to something that, even though it's in the PSR, we cannot object because it's not attributable. But that wasn't objected either. You have to look at the transcript and see that the district court was not willing to listen to my client's attorney. And, in fact, told him that what he was about to say was irrelevant, even though we don't know what he was about to say. Well, counsel, let me ask you this. So, specifically, the district court said that two rival gangs, of which I have to assume Morales was part of one, were involved in a shootout and it was a manhunt. So are you saying that when the court said that, you were not given an opportunity to object? No. There were. We have no evidence or no basis to object. No, we're not objecting to that. We didn't object to anything in the PSR. Nothing in the PSR that related to... No, that was a statement that the court made about your client. Well, it was an assumption the court made, and that we do object to. But there was no objection. And that's in the brief. There was no objection at the time. No, there was no objection at the time. And you were not the counsel. It was a different counsel. No, I was not the counsel, and I'm going on based on the transcript.  to talk about the weakness of the evidence in the case. And you will find it there. Let me ask you, counsel, since unrelated to that issue, you have another issue, and that's the delegation of the probation office that was not objected to regarding the therapy. Right. My question is, why is there error? Because there's another remedy for that, and that is if your client goes to X number of sessions and everything is fine, he can always ask the court or through the probation officer to terminate that condition earlier, because supervised release, judges are very flexible and can terminate conditions on and off. Anything you have to say about that? What I have to say about that is that it's not the same to be able to go to court after the fact when you have to challenge a probation officer's determination, which is not as simple as it may appear to a judge. To an attorney, it's simple, but to a client, it's not simple. They're still subject to supervised release being supervised by that same probation officer, and they have to make the determination that what they're going to do is going to be they can't go against what the probation officer says unless they're willing to take the chance that they're going to anger the probation officer and then they're going to have to deal with the consequences of that. Is your basic point that the sentence hinged in large part on a finding that he was involved in the shootout and there's no evidence that he was involved in the shootout? That's correct. The only evidence is circumstantial because he was in a group of people, of four people, that somehow the judge decided were the same four people as involved in the Prius shootout, and she confused the two things, the two events, and she confused the people in the events and the number of people in the events. So, yes. But, Counselor, you're saying it's circumstantial, but why does that circumstantial evidence not give rise to that reasonable inference that your client was involved? Because he wasn't identified by the victim. He wasn't identified. The victim had every opportunity. Are you saying that that evidence would be insufficient to give rise to that reasonable inference? That's right. It's an inference that can be drawn, but I don't believe it to be reasonable in light of the direct evidence that there was. Is there any other fact that you say was clearly erroneous that's unsupported in the record? There's a list of statements that the court made, the district court made, in our brief, and it's a laundry list of all the factual errors that the court committed. When you compare what the court said with what it says in the PSR, you'll see that they're just wrong. And the court, based on all of those wrong misunderstandings of the evidence, came up with the inference that my client was involved in all of the prior events. So let me get you focused back on my question. The judge assumed that he was involved in the shootout, and you've told us there's no evidence of that in the record. Is there any other particular fact you would point us to where the judge said X, but the record provides no support of X? Yes. There are a whole number of them. Well, because I'm reading the sentencing, and it looks like it was the shootout that drove the sentencing. It said some of the individuals were found were in possession of rifles who were hiding. In fact, the PSR mentioned only one person who was found in possession of a rifle hiding. There are talks about the blood trails at the scene of the Prius carjacking that were followed to find the man that was found and arrested. And, of course, there were forensic tests made, and those forensic tests were reported. But that doesn't appear in the PSR. Okay. It wasn't objected to. Maybe it should have been. Nonetheless, despite the fact that all of those blood trails and hundreds of cartridges, spent cartridges were found, and all of which were tested for fingerprints, none of that appears in the PSR. But now you're making a whole – my question was, is there anything that the judge said to justify the sentence that was not in the PSR other than the assumption that your client was involved in a shootout? Okay. The judge said there were minors that witnessed all of these events, and the minors were hiding in a bedroom. They couldn't have possibly have witnessed the events. But the PSR says they witnessed the events. No, it doesn't. It says they were there, doesn't it? It says they were at the house, but if you read it carefully, you'll see that they were taken by one of the victims to a bedroom in the back of the house, so they wouldn't see them. Anything else? Yes. The district court said that there were people – that the shootouts and public roads at any time and people armed with heavy weapons is evidence of the nature and the seriousness of the crime, and there's no evidence that anyone was armed with heavy weapons. It's just not in the record. The district court added a victim to the Lancer carjacking, claiming that there were two victims of the Lancer carjacking and that the victim of the Lancer carjacking – there were children present and there weren't, and that the Lancer carjacking victim identified the appellant, which they did, but the Prius carjacking appellant did not. And if the court was talking about children at a carjacking – Now you're getting off to a separate point. I'm sorry. Is there anything else that the district court relied on in the sentence that you say is totally unsupported by – Yes, the fact that the district court said that the shootings took place in a neighborhood that was very crowded, and in fact, there's no location specified in the PSR where the shootings took place. The only evidence was one witness who said that it sounded like they came from Sector Honduras in Loiza, and according to Google Earth, Sector Honduras is bounded on one side by empty land, not a crowded neighborhood. The district court said that she thought that the two groups went to shoot this out, and this was something that happened commonly in Puerto Rico, and so based on her experience – I'm paraphrasing now – based on her experience, that that was what must have happened when in fact the actual photographs of the scene and the actual location gives rise to an inference that it was an ambush, not a shootout. I mean, it was a shootout because people were shooting, but not that it was a mutual combat. Those photographs, were they presented sentencing? Because there's no objection. No. That's not evidence in the case. No, it's not. It's not part of the record. That's correct. Well, we'll hear from the government. And that's it. That's all. Thank you. Thank you very much. At this time, if counsel for the government would introduce himself on the record, he can begin. May it please the Court. Good morning. Thomas Klumper on behalf of the United States. In this case, first I'd like to clarify or actually correct one statement in the brief regarding the factual statements. On page five, line five, where it talks about a group of officers saw, or upon arrival, the officers saw a group of individuals abandon two cars on the side of the road and flee. What it should have stated was that the officer saw a group of individuals in the vicinity of the cars, of two cars that were shot up, and that they had fled. So, just to clarify that. Now, in this case, it's government's position that there was more than just a Lancer being carjacked. And as unobjected to by the defendant in this case, the PSR reflects evidence that why was this Lancer being carjacked? Because they were trying to flee a scene that they just had a gang shootout. There was no objection regarding the terminology where the judge stated there was a gang, two gangs shooting it out. And you have to look at it. Based on the PSR, you have to reverse back what had happened here. You have to see here the defendant pled guilty to the Lancer carjacking. And when you go back looking at the PSR, what had happened, what had occurred? There were shootouts. Officers arrived. They see one group, and that's where it's clear, fleeing the vicinity of the cars. Then, when they cleared the area, they find there's no mention of blood. There's no mention of anything else on that area. What do they do? They go, and they go to another area, and where do they find blood, more shell casings, everything else? And that's where we have the persons that had the Prius that was attempted to be carjacked but didn't start, and blood and a trail of blood going through the house and over a wall. And shortly afterwards, where were these people? We have the defendant and three other defendants arrested or chased in this car scene. And what we have also is the victim. Victim number one said there was at least three persons, individuals, that were in front of the house. So it wasn't just three. There was more than three. So we do know that for a fact because of the fourth person. Appellant isn't arguing that that didn't happen. What he's arguing is that there's not sufficient evidence that would suggest what his culpability in everything is that he didn't admit to. Well, Your Honor, you have to look at it also in this. You have to go, like I said, you have to go back. What the defendant admitted was he was shot in the instant offense, meaning there was no shooting alleged when he stole the Prius or anything. So the only shooting that occurred was, and it says instant offense was, when there was the previous, when there was a gang shootout. So we are left with the defendant admitting that he was shot during that gang shootout. So, and then what do we have? We have showing. What do we have? Cooperating. Even the defendant admits that the company, through others, participated with him in the shootout. He admits that on page 15 of his brief. So here the defendant was with him. He gets shot. What do you think? He was shot by a shotgun. Yes, although they didn't describe what shell casings were abandoned. There were shell casings by the car and by also the location where the house was located. Now he's contesting, was it a neighborhood or not? We know there were houses there because he said, the victim said, two houses down, meaning their house, and then two houses down, there was shooting. So there were neighbors. There were people living there. Two, yes, there was at least two rifles that we know because we have one that was found by the defendant. One of the persons, Fuentes Mijan, they followed the blood trail to his house or the property next door that had an opening. They found him with a rifle. And one of the witnesses, actually the witness from the Lancer, testified she saw he had a rifle. One of them had a rifle. So there were at least two rifles involved in this case and had identified the defendant with a rifle. As for the heavy weapons statement, the court was doing in general what was going on in Puerto Rico, all these heavy weapons. And here in this was a shootout with rifles and pistols. So it was explaining in that case why her concern that this being a gang shootout happening, occurring quite a bit in Puerto Rico, and this is a typical scenario where a variance should be upward. Usually, I've seen other statements by the same judge, usually connecting machine guns to machine guns used in a case. Here there's a reference to heavy weapons, what heavy weapons were involved in this case. Well, just saying, I think they were making a statement in general what is happening in Puerto Rico. And here she did clarify in this case there were only rifles and pistols. So she did clarify. And as for the victims, the children, and other things, the court clarified that the children were taken to the back room. So there was no error in her statement regarding the children. Any other questions regarding this case, Your Honor? So on him being involved in the shootout, the initial incident, if I'm understanding correctly, you're saying that's the only – he was shot and that's the only way he could have been shot. Exactly, Your Honor. And he did stay – it did stay in the – excuse me, Your Honor – in the instant offense. So meaning in showing based on the facts, the offense conduct, it's all related, all relevant conduct to it. So does him being shot equate to him being involved in the shootout versus him being an innocent bystander? Well, Your Honor, he was with a pistol. It was a rifle or a pistol at the time when he was seen actually after the fact. So, I mean, and he was with these people. He doesn't live in that neighborhood. If you look, even what counsel has submitted for Google Maps assistance, because if you think about it, he lives in Santiago. Why was he with these individuals? Why was he driving? He even admits he's with these two or three other individuals that participated in the shootout. So – and there, why would somebody be shooting at him and he gets shot with a shotgun and gets injured? And he was with a weapon. Do you want to say a bit on the court's delegation of authority? In this case, there was no error in this case. Actually, the defendant, I think, waived it because he was advised by the PSR, and that when counsel stated there were no objections, no recommendations, no changes to it, I believe there's a waiver actually as to the condition because he was in the PSR, was not unobjected to, and it was advised that it was going to be imposed. Now, in this case, also, what was the purpose for it? It's stated in the PSR and as well as the court in the judgment itself, it's for rehabilitation purposes. It wasn't for psychiatric treatment or anything else. This court has upheld that it's not improper delegation where the court imposes the condition and then leaves it for the probation officer, delegate to the probation officer, to determine what type of treatment or even how much treatment is required. And in this case, it was even more restrictive because it was required that it have somebody else responsible, somebody else determine or help determine whether the condition should continue or not, meaning whoever is doing the therapy itself was supposed to give input to the probation officer as to when or what, you know, as to whether or not it should continue or not. Counsel, let me ask you similar to what I asked counsel. From my experience in the district court, these conditions, if the appellant complies, let's say, within a year and there's a good recommendation, probation officers will inform the court. The court can terminate that. If the probation officer doesn't, defense counsel can file a motion on his behalf and it can be terminated. And those are things that in supervised release, contrary to a sentence of imprisonment, which the judge after imposing a sentence can't touch, supervised release judges are flexible. So that would also give this gentleman an opportunity to terminate that early if necessary. That is correct, Ron, and we do argue that in the brief that he does have an opportunity. If they believe it's unnecessary, he can file a motion and have it corrected and have it, you know, have the therapy, no longer do therapy in this case. Any other questions? Then we rest on our brief. Thank you. Thank you. That concludes the argument in this case.